SAMUEL, Judge.
This is a suit for the balance due for merchandise sold and delivered by plaintiff to the defendant under a printed consign-ment and franchise agreement furnished by the plaintiff. Defendant contends the merchandise was lost or destroyed as a result of a hurricane and that, under the provisions of the consignment-franchise agreement, defendant is not liable therefor. After trial there was judgment in favor of the defendant, dismissing plaintiff’s suit. Plaintiff has appealed.
In this court both litigants concede there is a balance due of $2,130.77 representing merchandise consisting entirely of automotive tires which were delivered to the defendant’s place of business and thereafter not accounted or paid for. The pertinent provisions of the consignment-franchise agreement read:
“2. The Consignee [defendant] shall exercise due care in the housing, protecting and preserving of said goods as the Consignor’s [plaintiff’s] property, * * * The Consignor will insure the said goods for its benefit and in its name in such amounts as to it may seem proper, against loss or injury by fire, windstorm, cyclone, tornado, hail, explosion, riot, civil commotion, aircraft, smoke, vehicles and sprinkler leakage, and shall charge the cost thereof to the Consignee who shall pay the same to the Consignor upon demand by Consignor. * * *
3.Delivery of goods by the Consignor to the Consignee shall be f. o. b. carrier in the Consignee’s city. The Consignee shall at his own expense safely transfer said goods from said point of delivery to his place of business and after such delivery the Consignee will bear all the risks of loss of or injury to such goods, whatsoever be the cause or circumstances, and of collections upon sales of such goods, and will indemnify the Consignor fully against any expense that it may incur from any loss of or injury to said goods by theft or any other happening or casualty, except loss or injury caused by fire or casualty covered in the extended coverage clauses of fire insurance policies.” (Emphasis ours).
*816 Plaintiff insured the tires involved in this controversy only against loss or damage by fire; extended coverage was not carried. The only evidence contained in the record relative to the manner in which the merchandise was lost is the testimony of the defendant himself. In his reasons for judgment the trial judge stated he accepted that testimony, which is as follows:
Defendant operates a service station, selling gas, automotive parts and accessories, at Arabi, Louisiana and resides approximately a half block away in Carolyn Park. The business is housed in a new brick building. During business hours the tires in question were placed on display outside of the building. At the close of business on September 9, 1965, as was customary, they were placed on large merchandising stands in a showcase. Hurricane Betsy occurred during the night of September 9, 1965. The hurricane winds reached a velocity of about 130 miles per hour. The water, which began to- rise between 3:30 and 5:30 the next morning (the height of the hurricane arrived and passed much earlier that night), reached the second floor of defendant’s residence. Finding a small pirogue floating by during the morning of September 10, defendant got into the pirogue and paddled over to his service station. At that time the water was about 6 feet deep in and around the station. The wind had blown off part of the station’s roof and had blown out all the glass, frames and doors in the building. It also blew the tires in question through the glass showcase. It was so strong it had blown large cigarette and coke machines across the street. Defendant saw people in boats pick up some tires which were floating in the street. He called to them to bring the tires back but they paid no attention and he was unable to catch them because they were in outboard motor boats and he was paddling a pirogue. The water remained at its maximum height for about 7 days and then began to drop about a foot each day. When the National Guard allowed him to enter his building approximately two weeks later there was nothing left in the building.
Appellant makes no contention that the defendant failed to exercise due care in housing, protecting and preserving the tires as required by the consignment-franchise agreement, or that it was not obligated by the agreement to insure the tires under a policy of fire and extended coverage. Appellant’s sole contention is that the loss of the tires was occasioned not by windstorm but by flood, a peril not covered by fire and extended coverage.
The question presented is whether the tires were lost as a result of windstorm or as a result of the flooding waters which arose after the height of the hurricane had passed. As the defendant was not present when the tires were either blown or floated out of the building we cannot accept that part of his testimony in which he said the wind blew them out. However, it appears that such was the case.
It is highly improbable that a wind reaching a velocity of 130 miles per hour, which blew off part of the building’s roof, blew out all of its glass, frames and doors, and blew two heavy machines across a street would fail to blow out of the building the tires on display in a showcase. We are satisfied from the record that, after the glass of the showcase was blown out, the tires were blown out of the building by the hurricane winds. Of importance is the fact that the flooding water did not begin to rise until after the wind had subsided from its maximum velocity. Insofar as this contest between the present litigants is concerned, we are in agreement with the conclusion reached by the trial court, i. e., that the loss of the tires was occasioned directly by windstorm. See Ebert v. Pacific Nat. Fire Ins. Co., La.App., 40 So.2d 40.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.